# EXHIBIT A

IN THE SUPERIOR COURT OF (Your County) COUNTY

STATE OF GEORGIA

DAVID ALLISON, SHARON
ALLISON

_____

                                                    PLAINTIFF

CIVIL ACTION.
NUMBER_____

VS.

CERES ENVIRONMENTAL
SERVICES, INC., GLYNN COUNTY,
and GLYNN COUNTY AIRPORT COMMISSION

                                                    DEFENDANT

SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

CERES ENVIRONMENTAL, INC.
900 OLD ROSWELL LAKES PARKWAY
Suite 310
ROSWELL, GA  30076

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____ _____ , 19_____

                                        (Your Name)
                                        Clerk of Superior Court

                                        By_____
                                                            Deputy Clerk

Instructions:   Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used

SC-1 Rev.85

IN THE STATE COURT OF GLYNN COUNTY
STATE OF GEORGIA

DAVID ALLISON and SHARON
ALLISON,

      Plaintiffs,

v.

CERES ENVIRONMENTAL
SERVICES, INC., GLYNN COUNTY
AIRPORT COMMISSION, and
GLYNN COUNTY, GEORGIA,

      Defendants.

Civil Action File No. _____

## **COMPLAINT**

COME NOW, David Allison and Sharon Allison, Plaintiffs in the above-styled action, by and through the undersigned counsel, and allege the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to all other allegations.

### **Parties, Jurisdiction, and Venue**

1. Plaintiff David Allison at all relevant times has been and continues to be a citizen of Glynn County in the State of Georgia, residing at 1605 Demere Road, St. Simon's Island, GA 31522.

2. Plaintiff Sharon Allison at all relevant times has been and continues to be a citizen of Glynn County in the State of Georgia, residing at 1605 Demere Road, St. Simon's Island, GA 31522.   David and Sharon Allison are hereinafter "Plaintiffs" or "the Allisons."

1

3.  Defendant Ceres Environmental Services, Inc. ("Ceres") is a Minnesota company with its principal place of business at 3825 85th Ave N., Brooklyn Park, MN, 55443-1906.

4.  At all relevant times, Ceres maintained its registered agent in Fulton County, Georgia at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076.

5.  Service may be made upon Ceres at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076.

6.  Defendant Glynn County, Georgia is a county organized and existing under the laws of the State of Georgia.

7.  Glynn County may be served by service on the Chairman of the Glynn County Board of Commissioners, Bill Brunson, at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

8.  Defendant Glynn County Airport Commission is, on information and belief, a Component Unit of Glynn County, Georgia.

9.  The Glynn County Airport Commission may be served by service on the Executive Director Robert Burr, at 295 Aviation Parkway Suite 205, Brunswick, GA 31525.

10. The acts and omissions of Defendants, as alleged herein, were conducted and/or occurred in the State of Georgia.

11. Defendants are is subject to the jurisdiction and venue of this Court pursuant to O.C.G.A. §§ 14-11-1108(b), 14-2-510(b)(1) and 9-10-31(b).

2

12. Jurisdiction and venue are proper.

13. Ceres has been properly served with process in this action.

14. Glynn County has been properly served with process in this action.

15. The Glynn County Airport Commission has been properly served with process in this action.

### Factual Allegations

16. On October 7th of 2016, Hurricane Matthew hit St. Simon's Island.

17. Ceres was hired to clean up and process the organic debris (trees and other vegetation) left by Hurricane Matthew.

18. Unfortunately for the Allisons, Ceres set up a site for processing the organic debris next to the Allisons' home.

19. Specifically, Ceres set up the organic debris processing site on the Malcolm McKinnon Airport property.

20. The Malcolm McKinnon Airport property is adjacent to the Allisons' home.

21. On information and belief, the Malcolm McKinnon Airport property is owned by Glynn County and is operated by the Glynn County Airport Commission.

22. On information and belief, Ceres was contracted by Glynn County and/or the Glynn County Airport Commission to remediate organic debris after Hurricane Matthew.

    a. Ceres was contracted by Glynn County to remediate organic debris after Hurricane Matthew.

3

b. Ceres was contracted by the Glynn County Airport Commission to remediate organic debris after Hurricane Matthew.

23. On information and belief, Glynn County and/or the Glynn County Airport Commission authorized Ceres to set up the organic debris processing site on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

a. Glynn County authorized Ceres to set up the organic debris processing site on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

b. The Glynn County Airport Commission authorized Ceres to set up the organic debris processing site on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

24. On information and belief, Ceres and/or Glynn County and/or the Glynn County Airport Commission selected the site for organic debris processing on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

a. Ceres selected the site for organic debris processing on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

b. Glynn County selected the site for organic debris processing on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

4

    c. The Glynn County Airport Commission selected the site for organic

       debris processing on the Malcolm McKinnon Airport property,

       adjacent to the Allisons' property.

25. The Allisons had left St. Simon's before Hurricane Matthew struck and they

    returned on or about October 26, 2016.

26. When the Allisons returned home, they found that Ceres had set up an

    organic debris processing site approximately 100 feet from their home.

27. The organic debris processing site was replete with massive piles of trees

    and brush.

28. Below is a photo David Allison took of a large deposit of organic debris:



29. The organic debris processing site had grinding machinery set up to process the environmental debris.

30. The grinding machinery flooded the air with dust from the organic debris.

31. The dust from the grinding operation coated the Allisons' property, home and cars, and it entered their home and coated the inside of their home.

32. The dust from the grinding operation caused David Allison to experience increasingly severe respiratory issues.

33. Once David began to experience serious medical effects from the exposure, the Allisons reached out to the Glynn County Airport Commission to ask about the operation.

34. Ceres project manager Garrett Shores responded in mid-November, 2016, visiting the Allisons to discuss the grinding operation.

35. David Allison walked Mr. Shores walked around the house and the yard and showed Mr. Shores wood dust covering cars, windows, outdoor furniture, greenhouse, and the garage, as well as their vehicles. David pointed out how the vibration and shaking caused by the heavy industrial machinery and dumpster trucks had cracked and damaged the visible caulking around the windows and the doors.  Inside, David showed Mr. Shores the wood dust and debris that had accumulated as a result of the grinding operation.

36. Mr. Shores acknowledged the wood dust caused by the grinding operation and explained that that the operation would normally include a watering

6

down process on the debris piles that would minimize the dispersal of the

dust, but that they had not been using water on this site because of

logistical difficulties and staff shortages.

37. Mr. Shores apologized and offered to send a cleaning crew to the house

once the operation was finished.

38. Ceres did not, however, cease its operations.

39. Ceres did not cease its organic debris grinding operation despite knowing

that the operation was infesting the Allisons' property with massive

amounts of organic dust.

40. Throughout November and December, the Allisons continued to suffer

from reactions to the organic dust, and they left St. Simon's Island on

December 12.

41. When the Allisons returned on December 27, the grinding operation had

not been completed and the Allisons continued to suffer medical reactions

to the dust and debris.

42. The Allisons were told by their doctors that they needed to vacate their

home.

43. On January 5, 2017, the Allisons again left St. Simon's Island.

44. On January 16, 2017, David Allison sent a letter to Ceres, Glynn County

(via Glynn County Commissioner J. Peter Murphy, M.D.), and the Glynn

County Airport Commission.

7

45. David Allison's January 16 letter outlined the setup of the organic debris processing site, the organic debris grinding, the severe impact on the Allisons' property, and the severe health impacts suffered by the Allisons as a result of the debris processing.

46. On January 19, 2017, the Allisons received a call from Ceres representative Tia Laurie who told the Allisons that the grinding operation was complete.

47. The Allisons returned to St. Simon's Island on January 25, 2017, and when they entered their home David immediately had a respiratory attack.

48. The Allisons left their home to stay in hotels and condos for the next several months while they communicated with Ceres regarding the cleanup of their home.

49. The Allisons sought an estimate from Biosweep, a decontamination service, to remediate the damage caused to their home and property by Ceres' grinding operation.

50. Ceres refused to meet the estimate from the decontamination service, offering to pay only a fraction of the cost of remediation.

51. Because Ceres failed to fund the decontamination of their home, the Allisons did not decontaminate their home in the summer of 2017.

52. Then, on September 11, 2017, Hurricane Irma hit St. Simon's Island, causing an evacuation and closing the island for several days.

53. After Hurricane Irma, Ceres was hired again to clean up organic debris.

8

54. Ceres again set up their site for processing the organic debris on the Malcolm McKinnon Airport property.

55. In other words, Ceres set up their site for processing organic debris on the *very same* piece of property next to the Allisons' home.

56. Again, massive deposits of organic debris piled up behind the Allisons' home, and the organic debris processing site covered the Allisons' property in layers of organic waste.

57. The organic dust against covered the Allisons' property and invaded their home, coating their property.

58. On information and belief, Ceres had been contracted by Glynn County and/or the Glynn County Airport Commission to remediate organic debris after Hurricane Irma.

   a. Ceres was contracted by Glynn County to remediate organic debris after Hurricane Irma.

   b. Ceres was contracted by the Glynn County Airport Commission to remediate organic debris after Hurricane Irma.

59. On information and belief, Glynn County and/or the Glynn County Airport Commission authorized Ceres to set up the organic debris processing site on the Malcolm McKinnon Airport property, adjacent to the Allisons' property.

9

    a. Glynn County authorized Ceres to set up the organic debris

      processing site on the Malcolm McKinnon Airport property, adjacent

      to the Allisons' property.

    b. The Glynn County Airport Commission authorized Ceres to set up

      the organic debris processing site on the Malcolm McKinnon Airport

      property, adjacent to the Allisons' property.

60. On information and belief, Ceres and/or Glynn County and/or the Glynn

   County Airport Commission selected the site for organic debris processing

   on the Malcolm McKinnon Airport property, adjacent to the Allisons'

   property.

    a. Ceres selected the site for organic debris processing on the Malcolm

      McKinnon Airport property, adjacent to the Allisons' property.

    b. Glynn County selected the site for organic debris processing on the

      Malcolm McKinnon Airport property, adjacent to the Allisons'

      property.

    c. The Glynn County Airport Commission selected the site for organic

      debris processing on the Malcolm McKinnon Airport property,

      adjacent to the Allisons' property.

61. The organic debris processing site continued its operation for months.

62. On information and belief, the giant deposits of organic waste next to the

   Allisons' property were not removed until February of 2018.

10

63. Before the Hurricane Irma organic debris processing site was set up next to the Allisons' home, Ceres was aware of the impact the operation would have on the Allisons' property.

64. Before the Hurricane Irma organic debris processing site was set up next to the Allisons' home, Glynn County was aware of the impact the operation would have on the Allisons' property.

65. Before the Hurricane Irma organic debris processing site was set up next to the Allisons' home, the Glynn County Airport Commission was aware of the impact the operation would have on the Allisons' property.

66. Defendants knew that this organic debris processing site would pollute the Allisons' property and allowed the organic debris processing site to be set up next to the Allisons' home regardless.

67. On information and belief, at the time Ceres set up an organic debris processing site on the Malcolm McKinnon Airport property after both Hurricane Matthew and Hurricane Irma, Defendants had actual and/or constructive notice of the history of pollution caused by the organic debris processing site on the Malcolm McKinnon Airport property.

68. On information and belief, at the time Ceres set up an organic debris processing site on the Malcolm McKinnon Airport property after both Hurricane Matthew and Hurricane Irma, Defendants did not have a functional and/or adequate system for containing the airborne debris at the organic debris processing site.

69. On information and belief, at the time Ceres set up an organic debris processing site on the Malcolm McKinnon Airport property after both Hurricane Matthew and Hurricane Irma, Defendants had not implemented protocols to contain the airborne debris at the organic debris processing site.

70. Following the pollution of the Allisons' property with organic dust after both Hurricane Matthew and Hurricane Irma, Defendants made no attempt to remediate the effects of the organic dust on the Allisons' property.

71. On information and belief, Defendants did not notify the EPA or the EPD of the pollution of the Allisons' property.

72. Following Defendants' pollution of the Allisons' property, David Allison has suffered dozens of respiratory attacks, shortness of breath, coughing fits, wheezing, and skin reactions.  David has been forced to visit multiple medical providers including a pulmonologist and an allergist due to his exposure to the organic dust emitted by Defendants.

73. The organic dust released by Defendants onto the Allisons' property have rendered the property unsuitable and/or unsafe for residential habitation.

74. At the time of this filing, the Allisons' home remains unsafe for the Allisons to return.

75. The injuries discussed herein – the Allisons' medical injuries, their property damage, and the fact that their home remains uninhabitable – are a direct and proximate result of Defendants' malfeasance.

76. The organic dust released by Defendants onto the Allisons' property migrated from the organic debris processing site to the Allisons' property as a result of the negligent, unlawful, reckless and willful acts and omissions of Defendants.

**Count One: Nuisance**

77. Plaintiffs reallege and restates each and every allegation set forth in the foregoing paragraphs as if fully rewritten here.

78. David Allison is a landowner and resident of real property located at 1605 Demere Road, St. Simon's Island, Georgia 31522.  This property is located adjacent to the Malcolm McKinnon Airport property.

79. At all times relevant hereto, Defendant Glynn County owned the Malcolm McKinnon Airport property on which the organic debris processing site was located, and from which the airborne organic dust migrated onto the Allisons' property.

80. At all times relevant hereto, Defendant Glynn County Airport Commission controlled, operated, managed and/or supervised the activities at the Malcolm McKinnon Airport property on which the organic debris processing site was located, and from which the airborne organic dust migrated onto the Allisons' property.

81. At all times relevant hereto, Ceres controlled, operated, managed and/or supervised the activities at the organic debris processing operation on the

Malcolm McKinnon Airport property, from which the airborne organic dust migrated onto the Allisons' property.

82. At all times relevant hereto, Defendants were and/or continue to be in a position to control and prevent the toxic organic dust from migrating onto the Allisons' property.

83. Defendants knew or should have known that the organic debris processing operation on the Malcolm McKinnon Airport property was contaminating property of neighboring properties, yet Defendants have not taken reasonable and appropriate steps to stop the organic dust from contaminating the Allisons' property.

84. Defendants knew or should have known that the organic debris processing operation on the Malcolm McKinnon Airport property was not equipped with a functional and/or adequate retention and/or containment system for mitigating the effects of the organic debris processing operation, and that the release of organic dust likely would contaminate surrounding properties.

85. Despite knowing that organic dust likely would contaminate neighboring properties, Defendants have not taken reasonable and appropriate steps to stop the organic dust from contaminating the Allisons' property.

86. The actions and omissions of Defendants constitute a continuing/recurrent, temporary, abatable nuisance under the laws of the State of Georgia.

14

87. The Allisons are continuing to be harmed by the nuisance created and/or maintained by Defendants.

88. The Allisons' damages proximately caused by the continuing/recurrent, temporary, abatable nuisance created and maintained by Defendants include, but are not limited to, medical damages, property damage, the cost of remediating the property, the cost of alternate housing while the Allisons' home remains uninhabitable, annoyance, discomfort, anxiety, frustration, inconvenience, loss of quality of life, loss of enjoyment, and any and all other elements of damage allowable under the laws of the State of Georgia arising out of or related to the contamination's impact on their normal use and comfort of their home and property.

89. As a direct and proximate result of Defendants' continuing/recurrent, temporary, abatable nuisance, David Allison has suffered from the diminution in the value of his real property and his loss and enjoyment of same.

90. In addition to the compensatory damages referenced herein, Defendants shall be required to clean up the contamination affecting the Allisons' property and to bear all costs in preventing the nuisance from continuing in the future.

### Count Two: Negligence and Intentional Misconduct

91. Plaintiffs reallege and restate each and every allegation set forth in the foregoing paragraphs as if fully rewritten here.

15

92. At all times relevant, Defendants owed a duty of due care to neighboring property owners to properly store, use, discard, and dispose of the organic wood dust utilized at the organic debris processing operation on the Malcolm McKinnon Airport property in a manner as to not to contaminate the surrounding properties and/or infringe, trespass and/or cause harm to the neighboring properties.

93. Defendants breached their duty of due care and acted carelessly, negligently, and intentionally in one or more of the following ways, including but not limited to:

   a.   Failing to dispose of organic airborne dust in a safe, legal and reasonable manner;

   b.   Failing to implement systems and protocols to prevent the migration of organic airborne dust from the Malcolm McKinnon Airport property to neighboring properties;

   c.   Failing to train, educate and instruct employees regarding safe and appropriate actions to prevent the migration of organic airborne dust to neighboring properties;

   d.   Failing to clean up, control, prevent, contain or otherwise mitigate the harm resulting from the unlawful contamination emanating from the Malcolm McKinnon Airport property; and

   e.   Allowing organic airborne dust from the Malcolm McKinnon Airport property to migrate onto neighboring properties.

16

94. As a direct and proximate cause of the negligence, carelessness, willful misconduct and breach of duty of care by Defendants, the Allisons suffered significant damages, including, but not limited to medical injuries, annoyance, discomfort, anxiety, frustration, inconvenience, loss of quality of life, and loss of enjoyment arising out of the impact of the contamination on their normal use and comfort of their home and property, the diminution in the value of real and personal property, the cost associated with cleaning up the contamination of the property and preventing the spreading of such contamination, and any and all other elements of damage allowable under federal law and the laws of the State of Georgia.

### Count Three: Trespass

95. Plaintiffs reallege and restate each and every allegation set forth in the foregoing paragraphs as if fully rewritten here.

96. At all times relevant, David Allison owned, and the Allisons resided at, 1605 Demere Road, St. Simon's Island, Georgia 31522.  This property is located adjacent to the Malcolm McKinnon Airport property.

97. At all times relevant hereto, Defendant Glynn County owned the Malcolm McKinnon Airport property on which the organic debris processing site was located, and from which the airborne organic dust migrated onto the Allisons' property.

98. At all times relevant hereto, Defendant Glynn County Airport Commission controlled, operated, managed and/or supervised the activities at the

Malcolm McKinnon Airport property on which the organic debris processing site was located, and from which the airborne organic dust migrated onto the Allisons' property.

99. At all times relevant hereto, Ceres controlled, operated, managed and/or supervised the activities at the organic debris processing operation on the Malcolm McKinnon Airport property, from which the airborne organic dust migrated onto the Allisons' property.

100.    At all times relevant hereto, Defendants were and/or continue to be in a position to control and prevent the toxic organic dust from migrating onto the Allisons' property.

101.    At relevant times, Defendants physically invaded the Allisons' property by and through their unauthorized release of toxic organic dust, which migrated onto the Allisons' property.

102.    The airborne toxic organic dust that Defendants caused and permitted to migrate onto the Allisons' property were toxic and inherently dangerous.

103.    Defendants were in a position to control, contain, prevent and mitigate the trespass of contaminants onto the Allisons' property, but Defendants failed to do so.

104.    As a direct and proximate result of Defendants' trespass, the Allisons have suffered significant damages, including, but not limited to, medical     injuries,     annoyance,     discomfort,     anxiety,     frustration,

18

inconvenience, loss of quality of life, and loss of enjoyment arising out of or related to the contamination's impact on their normal use and comfort of their home and property, the diminution in the value of the real property, the cost associated with assessing and/or cleaning up the contamination of the property (real and personal) and preventing the spreading of such contamination, and any and all other elements of damage allowable under federal law and the laws of the State of Georgia.

### Count Four: Strict Liability and Negligence Per Se

105.    Plaintiffs reallege and restate each and every allegation set forth in the foregoing paragraphs as if fully rewritten here.

106.    Defendants, individually and collectively, had a duty owed to the citizens of the State of Georgia and the Allisons not to install, modify, own, or operate any facility or stationary source or any equipment, device, article, or process capable of causing or contributing to the emission of air contaminants from such source or facility unless permitted and in compliance with applicable standards, limitations, requirements, or rules and regulations.

107.    On information and belief, Defendants did not obtain a permit to cause or contribute to the emission of air contaminants, and the processing operation on the Malcolm McKinnon Airport emitted toxic organic dust in violation of the Georgia Air Quality Act, OCGA § 12-9-1 et seq.

19

108.    Defendants, individually and collectively, owed a duty not to unlawfully interfere with the enjoyment of nearby property owners, but they unlawfully allowed toxic organic dust to migrate from the processing operation on the Malcolm McKinnon Airport property to the Allisons' property in violation of O.C.G.A. § 51-9-1.

109.    The Allisons were injured as a direct and proximate result of the unlawful conduct of Defendants, as alleged herein.

110.    Defendants are strictly liable to the Allisons for all damage caused by the unlawful release of airborne toxic dust that migrated to the Allisons' property.

## Count Five: Attorneys' Fees

111.    Plaintiffs reallege and restate each and every allegation set forth in the foregoing paragraphs as if fully rewritten here.

112.    Defendants' wrongful acts and omissions as set forth herein were undertaken in bad faith, thereby entitling the Allisons to recover from Defendants reasonable attorneys' fees, costs and expenses of this litigation pursuant to O.C.G.A. § 13-6-11.

113.    Defendants' callous disregard for the neighboring property owners is demonstrated by (1) their decision in November of 2016 to continue the organic debris processing operation next to the Allisons' property *after* learning that the operation was severely polluting the Allisons' property; and (2) their inexplicable decision to set up a second debris processing

20

operation after Hurricane Irma, knowing full well the impact on the Allisons' health and property.

114.     This stubborn refusal to consider the impact of their debris processing operation not once but twice and their refusal to pay for the remediation of the Allisons' property caused unnecessary trouble and expense to Plaintiffs, giving rise to an award of reasonable attorneys' fees, costs and expenses of this litigation pursuant to O.C.G.A. § 13-6-11.

### Count Eight: Punitive Damages

115.     Plaintiffs reallege and restate each and every allegation set forth in the foregoing paragraphs as if fully rewritten here.

116.     The acts and omissions alleged herein on the part of the Defendants, including but not limited to the intentional establishment of a debris processing operation next door to the Allisons' property on two occasions *after* being put on notice of the impact on the Allisons' health and property demonstrate Defendants' willful misconduct, malice, fraud, wantonness, oppression and entire want of care which raises the presumption of conscious indifference to consequences.

117.     Defendants' willful and wanton disregard for the life, safety and property of others is evidenced by, without limitation:

    a. Despite many years of hurricane clean-up operations, Defendants did not have a functional system for prevention and/or containment of airborne organic dust;

   b. Despite being aware of the impact of the debris processing operation to the Allisons directly – through (*inter alia*) personal contact with the Allisons and through the formal letter sent by David Allison to the Defendants – Defendants maintained the Hurricane Matthew debris processing operation and Defendants set up a *second* debris processing operation after Hurricane Irma.

118.   As a direct and proximate result of Defendants' egregious misconduct, the private property, health and well-being of Plaintiffs unnecessarily were placed in peril.

119.   Based on Defendants' willful and wanton disregard for the life, safety and property of others, Plaintiff seek punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount determined by a jury to deter Defendants and others similarly situated from placing commercial profits over and above the lives and welfare of the surrounding community, the demand for which is hereinafter stated.

WHEREFORE: Plaintiffs demand judgment against Defendants, individually and collectively, as follows:

1.   For Trial by Jury;

2.   For reasonable compensation for the past and present unlawful and unauthorized invasion, trespass and/or use of Plaintiffs' property;

3.   For compensatory damages proximately caused to the Plaintiffs for their medical injuries, annoyance, discomfort, anxiety, frustration, inconvenience,

22

loss of quality of life and loss of enjoyment arising out of or related to the contamination's impact on their normal use and comfort of their home and property.

4.    For compensatory damages for Plaintiffs' loss and enjoyment of their property and the diminution in the value of their real and personal property as a result of the unauthorized invasion, trespass and/or use of Plaintiffs' property;

5.    For the cost to assess, investigate and remediate Plaintiffs' property (real and personal) and prevent future contamination of Plaintiffs' property;

6.    For an award of attorneys' fees, costs and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

7.    For punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined by the jury to deter these Defendants and others similarly situated from acting in this unlawful and reckless manner in the future;

8.    For pre-judgment and post-judgment interests, as permitted by law;

9.    For all costs to be taxed on Defendants; and

10.    For other further relief this Court may deem just and proper.

Respectfully submitted this ___ day of September 2018.


/s/ Mark Begnaud_____
Mark Begnaud
Georgia Bar No. 217641
mbegnaud@gacivilrights.com

**HORSLEY BEGNAUD LLC**
750 Hammond Drive,

23

Building 12, Suite 300
Atlanta, Ga 30328
770-765-5559 (phone)
404-602-0018 (fax)